UNITED STATES of America,
Plaintiff–Appellant,

v.

Wesley JACOBS and Santokh Singh
Takhar, Defendants–Appellees.

No. 87–1082.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 18, 1987.

Decided Aug. 31, 1988.

David F. Levi, U.S. Atty., Sacramento, Cal., for plaintiff-appellant.

Eric K. Fogderude, Fletcher & Fogderude, Fresno, Cal., for defendant-appellee Jacobs.

George A. McKray, San Francisco, Cal., for defendant-appellee Takhar.

Before ALARCON and O'SCANNLAIN, Circuit Judges, and STEPHENS,* District Judge.

PER CURIAM:

The government appeals the district court's dismissal for prosecutorial misconduct of an indictment against Wesley Jacobs and Santokh Singh Takhar. The government contends that (1) no prosecutorial misconduct occurred and therefore the district court lacked a legal or factual basis for its dismissal, and (2) if reversed the case should be reassigned to another judge. We agree and we reverse and remand with instructions.

## FACTS AND PROCEEDINGS

The indictments at issue here result from the Food and Drug Administration's efforts to prevent the use of the drug chloramphenicol in animals that produce food. As part of this effort, in 1984 the FDA sent one of its agents, Robert Anderson, to investigate large purchases of chloramphenicol made by the animal hospital which Ja-

cobs and Takhar owned and operated. Based on the evidence Anderson discovered, in 1986 the grand jury indicted Jacobs and Takhar for mislabeling and adulterating chloramphenicol in violation of 21 U.S.C. §§ 331(k) and 333(a). In addition, the grand jury charged Jacobs with making false statements in violation of 18 U.S.C. § 1001 because he allegedly lied to Anderson.

On February 10, 1987, just an hour before the scheduled start of open court proceedings before Judge Price, appellees served the government with a "Motion to Determine Admissibility of Evidence." The government objected to the motion's timeliness because the motion (1) should have been filed by the January 16th pretrial deadline for defense motions, and (2) would have the effect of a suppression motion due to its late filing. During an in-chambers conference held before the beginning of the public proceedings, Judge Price rejected the timeliness objection and deferred ruling on the motion's substance until the end of the government's case. At this conference, Judge Price also stated that if he granted the motion, he would also "grant a motion of acquittal."

During Takhar's counsel's opening statement, the government objected because contrary to Judge Price's pretrial orders, he discussed the background of the chloramphenicol. In the jury's presence, Judge Price responded:

This is testimony concerning the government's own inability to determine what they are going to do. I have got to hear this man out. I have got to hear the case. I'm frankly confused as to what the government's case is. I don't think you folks know. Please proceed.

Later the same day, Jacobs' counsel, Eric Fogderude, cross-examined Anderson. During this examination, Fogderude handed FDA inspector Anderson a copy of the first page of his notes, and asked if the copy was complete. When Anderson re-

---

* The Honorable Albert Lee Stephens, United States District Judge for the Central District of California, sitting by designation.

plied the copy was incomplete, Judge Price ordered government counsel, D. Bruce Pearson, to read through every document personally, after which he berated Pearson:

THE COURT: You will report to me tomorrow morning at 9:00 o'clock. Is that understood?

MR. PEARSON: Yes, your Honor, I believe—

THE COURT: Do you understand what I have told you?

MR. PEARSON: Yes.

THE COURT: Repeat it.

MR. PEARSON: I am to have all the filed checked—

THE COURT: You are not to have the files checked. You are to personally go through them and read every document.

MR. PEARSON: Your Honor, I have gone through the files myself already that were made available to me from the F.D.A.

THE COURT: Counsel, counsel, counsel, did you hear what I said?

MR. PEARSON: Yes, I did, your Honor.

THE COURT: Failure to do so will be punishable by a contempt order; is that understood?

MR. PEARSON: Yes, your Honor.

THE COURT: You may sit down.

On February 11th, during an in-chambers hearing held before the start of open court proceedings, Fogderude admitted that he had made a mistake and that the government had provided a complete copy of Anderson's notes. Despite Fogderude's admission, Judge Price continued to complain about government counsel: "Every U.S. Attorney that appears in my court [relies] on somebody else to do [his] work." After this complaint, Judge Price stated that he would hold the government to its representation of complete discovery production.

More important, during this in-chambers hearing, Judge Price told Takhar's counsel, George McKray, that his client should win. The judge remarked:

*You have got a cinch in this case.* They can't prove that Takhar did anything, and if you got off that horse that you are riding about for the veterinary profession, you might get an acquittal at the end of the government case. But if you keep screwing around, you are going to get him convicted.

(emphasis added).

After the in-chambers hearing, government counsel on redirect examination asked Anderson to identify a document. When Anderson stated that the document was incomplete, Judge Price invited and then granted a motion to dismiss "on the basis of misconduct of government counsel." Then Judge Price left the courtroom. Immediately after the dismissal, Anderson and government counsel discovered that Anderson was mistaken; in fact, the document was complete. The government informed the court's law clerk of the error within two minutes after Judge Price left the courtroom and asked for the Judge to return. However, the judge replied the trial was over and a motion to reconsider should be filed if the government had anything to say.

■ Later that day, the government filed a motion for reconsideration. On February 25, 1987 Judge Price denied the motion because government counsel should have known during trial "of the truth or falsity of Anderson's statement," and because "[t]he defendant's jeopardy has been attacked." On March 24, 1987 the government filed a notice of appeal.[1]

## JURISDICTION

■ This court has jurisdiction under 18 U.S.C. § 3731 over government appeals in criminal cases, except when the double jeopardy clause bars further prosecution. *United States v. Schwartz,* 785 F.2d 673, 677 (9th Cir.), *cert. denied,* 479 U.S. 890, 107 S.Ct. 290, 93 L.Ed.2d 264 (1986). When

---

**1.** Although the appellees contend this appeal is untimely under Fed.R.App.P. 4(b), we find the government's notice of appeal filed on March 24, 1987 was timely because it was within thirty days of the district court's February 25, 1987 denial of the timely motion to reconsider. *United States v. Shaffer,* 789 F.2d 682, 686 n. 3 (9th Cir.1986).

a defendant moves for a mistrial, double jeopardy attaches only where the prosecutor intended to "goad" the defendant into making a mistrial motion. *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 16 (1982).

Here, no evidence shows that the prosecutor intended to "goad" the appellees into making a mistrial motion. Instead, the evidence indicates that appellees made the motion to dismiss because Judge Price invited them to do so. Thus, the double jeopardy bar does not apply. For this reason, this court has jurisdiction under 18 U.S.C. § 3731.

## STANDARD OF REVIEW

■ A district court may dismiss an indictment on any of three grounds: (1) due process, (2) inherent supervisory powers (protecting the integrity of the judicial process), and (3) statutory grounds. However, while we review a due process dismissal *de novo*, *United States v. Simpson*, 813 F.2d 1462, 1465 n. 2 (9th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987), we review both an inherent supervisory dismissal and a statutory dismissal for an abuse of discretion. *Id.; see United States v. Nat'l Medical Enters., Inc.*, 792 F.2d 906, 910 (9th Cir.1986).

Because of the different standards of review, we must decide as a preliminary matter on what grounds the district court granted the dismissal. We find that the district court grounded its dismissal on its inherent supervisory powers. Apparently, Judge Price dismissed this case on the basis of his perception that the government neglected to comply with his discovery order to produce complete copies of all documents. A dismissal rooted in a failure to obey a discovery order lies within a court's supervisory powers. *See United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir.1985) (noted that this court recognized supervisory power to dismiss for violation of discovery orders in *United States v. Roybal*, 566 F.2d 1109, 1110–11 (9th Cir.1977)).

## DISCUSSION

### A. *Dismissal of the Indictment*

■ The government argues that the district court erred when it dismissed the indictment for prosecutorial misconduct. We agree.

■ Because the drastic step of dismissing an indictment is a disfavored remedy, *United States v. Rogers*, 751 F.2d 1074, 1076–77 (9th Cir.1985), a district court may properly dismiss an indictment only if the prosecutorial misconduct (1) was flagrant, *United States v. Carrasco*, 786 F.2d 1452, 1455 (9th Cir.1986), and (2) caused substantial prejudice to the defendant. *Rogers*, 751 F.2d at 1077. In cases involving prosecutorial misconduct which is neither flagrant nor prejudicial, a district judge can still sanction the misconduct, but the sanction chosen must be proportionate to the misconduct. *See generally United States v. Cadet*, 727 F.2d 1453, 1470 (9th Cir.1984).

In short, absent flagrant and prejudicial prosecutorial misconduct, this court will find that the district court's dismissal of an indictment is an abuse of its discretion. For example, in *Gatto*, 763 F.2d at 1050, the district court dismissed an indictment because the government failed to abide by the court's discovery orders. However, this court held that the district judge abused his discretion in dismissing the indictment because it found neither violation of a discovery order pursuant to Fed.R. Crim. P. 16, nor any other violation. *Id.* at 1050–51. Similarly, in *Cadet*, the district court dismissed the indictment after the government refused to comply with the court's discovery order. 727 F.2d at 1454. Again, this court determined the district court abused its discretion in imposing a disproportionate sanction for violation of a partially invalid discovery order. *Id.* at 1470.

Here, when Anderson testified on February 11th that the document was incomplete, Judge Price dismissed the indictment for prosecutorial misconduct because he believed the government had not complied with court orders of complete discovery production. In fact, the government com-

plied fully with the court's discovery orders. Thus, the only possible prosecutorial misconduct during the trial occurred when the prosecutor failed to correct Anderson's mistaken testimony immediately; instead, the prosecutor corrected the testimony after two minutes. This two minute delay neither amounted to a flagrant act of prosecutorial misconduct nor resulted in prejudice to the appellees. Since the sanction imposed was disproportionately harsh in relation to the alleged misconduct, the district court abused its discretion in dismissing the indictment and we must reverse.

### B. *Reassignment to Another Judge*

■■■ The government argues that if this court reverses the indictment then this court should exercise its inherent authority to assign this case to a different judge.[2] We agree and remand to the district court with instructions that the case be reassigned to another judge according to the local rules.[3]

Although this type of relief is rare, there is no doubt in this circuit as to our authority to order a case reassigned. *Brown v. Baden*, 815 F.2d 575, 576 (9th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). Reassignment of a case to another judge depends on three factors:

(1) whether the original judge would reasonably be expected upon remand to

have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected,

(2) whether reassignment is advisable to preserve the appearance of justice, and

(3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Cintron v. Union Pac. R.R. Co.*, 813 F.2d 917, 921 (9th Cir.1987). The first two of these factors are of equal importance, and a finding of either one of them would support a remand to a different judge. *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).

Here, while we are confident that Judge Price would put out of his mind his previously expressed views upon remand in light of this opinion (therefore the first factor would not apply), we hold that we must order reassignment to preserve the appearance of justice. Here, the trial judge has (1) dismissed an indictment summarily and erroneously; (2) refused to reassemble the jury when just two minutes later the mistake was discovered; (3) denied the motion for reconsideration after the government had proven no misconduct; (4) allowed the

---

**2.** The government also argues that if we reverse this case, we can disqualify Judge Price on the basis of 28 U.S.C. §§ 144, 455. We disagree. These statutory provisions require such virulent personal bias or prejudice against the attorney as to amount to a bias against the party. *See United States v. Burt*, 765 F.2d 1364, 1368 (9th Cir.1985). Here, we find no bias against the government's attorney so virulent as to require recusal under these sections.

**3.** Subsequent to oral argument, we asked the parties for further briefing on two issues: (1) whether the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 preempted this court's authority to reassign a case; and (2) in reassigning a case, what is the appropriate method of reassignment—*i.e.*, should the case go to the Chief Judge of the district for reassignment. On the first issue, we find that the legislative history clearly indicates no intention to preempt the court of appeals' traditional power to reassign. *See* Report "Constitutional Issues

Raised By the Proposed Judicial Conduct and Disability Act of 1979," 125 Cong.Rec. 30045, 30049 ("abuse of judicial power, bias, or other conditions or conduct of judges are reachable only as they occur in particular cases with respect to litigants who have standing to raise these matters. The bill under consideration, by excepting out these cases, would not alter an appellate court's supervisory powers...."). On the second issue, we find that we have previously used any of three permissible methods—(1) reassignment through the chief judge of the district court, *see Cord v. Smith*, 338 F.2d 516, 526 (9th Cir.1964), *mandate clarified*, 370 F.2d 418 (9th Cir.1966); (2) reassignment through the clerk of the district court, *Brown v. Baden*, 815 F.2d 575, 576 (9th Cir.), *cert. denied* — U.S. —, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987); or (3) reassignment through the district judge, *see United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).

defendants to file an untimely motion to dismiss; (5) criticized the government's handling of the case in the jury's presence; and (6) offered strategic advice to one defendant's counsel on how to win his case. On these facts, the gains made for the appearance of justice by reassignment to another judge will outweigh the duplication of time and effort.

REVERSED and REMANDED with instructions that this case be reassigned in accordance with local court rules.

STEPHENS, D.J., District Judge, concurring in part and dissenting in part:

I concur in part A of the Discussion section of the majority opinion, but I dissent from part B because it is unnecessary and unfair to order reassignment of this case to another judge on remand.

### DISCUSSION

#### A. *The Appearance of Justice Dictates that Judge Price Try this Case*

I am in complete agreement with my colleagues when they express their confidence that Judge Price would put out of his mind his previously expressed views in light of part A of the majority opinion if we were to remand this case to him. I must part company from my colleagues when they state that they must order reassignment to preserve the appearance of justice. If we are all sure that Judge Price could try the case fairly and impartially, the appearance of justice is best preserved by allowing Judge Price to try the case. This would demonstrate that district judges can and do conform their actions to appellate decisions.

#### B. *The Circuit's Method of Reassignment is Unjust*

Even if I did agree with the majority that the appearance of justice required that

Judge Price not hear this case, I would still point out that the way Ninth Circuit panels order cases reassigned is unfair. Reassignment of this case in the manner the majority employs is punitive. Even though all three judges on the panel express the belief that upon remand Judge Price is capable of trying this case objectively, the majority nevertheless adopts a contradictory ruling that the appearance of justice warrants reassignment of the case. This conclusion will be disseminated publicly in the Federal Reporter and will have the same effect as "censuring or reprimanding [the] judge ... by means of public announcement." 28 U.S.C. § 372(c)(6)(B)(vi), one of the sanctions Congress established for the discipline of judges by enacting the Judicial Councils Reform and Judicial conduct and Disability Act of 1980, Pub.L. No. 96–458, 94 Stat. 2035 (1980) [hereinafter "the Act"].

Compare the majority's exercise of the court's "inherent authority" in this case with proceedings under the Act.[1] Whenever a Ninth Circuit panel exercises its "inherent authority" and publicly censures a district judge by ordering reassignment, the district judge is given no notice of the charges against him, nor is he given any opportunity to explain his actions. The district judge has no part in preparing the designated record that provides the basis for appellate review. In fact, there is no issue on appeal concerning the conduct of the judge. The charges appear in the briefs of the litigants. Consequently, the record as to the charges against the judge is compiled solely by the disgruntled litigants who have no concern for the interests of the judge or the appearance of justice.[2] Moreover, when the opinion on the merits of the underlying case must be published, the order of reassignment must also be published. In short, the district

---

1. The Act is intended to "operate in the large to effect the same results that follow from the exercise of an appellate court's supervisory powers in particular cases." Report "Constitutional Issues Raised by the Proposed Judicial Conduct and Disability Act of 1979," 125 Cong.Rec. 30045, 30049 (1979).

2. While the record in the instant cases is complete enough for us to decide that Judge Price is capable of impartially trying the case on remand, it cannot be considered complete for the purpose of meting our discipline.

judge is disciplined without having been accorded any procedural protection.

In marked contrast, the procedures Congress set forth under the Act are replete with procedural safeguards, and the process itself remains confidential unless the Judicial Council of the Ninth Circuit determines at the conclusion of the proceedings that some form of public discipline is necessary. Under the Act, when a complaint about a judge is filed, the chief judge of the circuit and the judge whose conduct is the subject of a complaint receive copies. Rule 3(a) of the Rules of the Judicial Council of the Ninth Circuit Governing Complaints of Judicial Misconduct or Disability [hereinafter "Rules"].

The complaint is first reviewed by the chief judge. The chief judge may dismiss the complaint if it is frivolous or if it does not fall within the scope of the Act, or he may conclude the proceedings if corrective action has already been taken. 28 U.S.C. § 372(c)(3). At this stage, Rule 4(b) provides that the chief judge may request the judge whose conduct is the subject of a complaint to file a written response to the complaint, or the chief judge may communicate orally with the judge in question and thereby correct any bona fide problem the complaint raises.

If the chief judge does not summarily dispose of the complaint through his initial review, he appoints himself and equal numbers of circuit and district judges of the circuit to a special committee to investigate the facts and allegations of the complaint. 28 U.S.C. § 372(c)(4). Rule 4(e) provides further protection to the judge by providing that a special committee will ordinarily not be appointed until the judge who is the subject of the complaint has been invited to respond and has been given reasonable time to do so. Then the committee conducts an investigation and prepares a report with its findings and recommendations that it submits to the judicial council. The judicial council conducts any additional investigation it considers necessary, and takes such action as is appropriate. 28 U.S.C. § 372(c)(6). An option available to the Council short of public censure or repri-

mand is to censure or reprimand the judge privately. 28 U.S.C. § 372(c)(6)(v). If an analogous procedure governed the instant case, and if Judge Price chose not to transfer the case voluntarily after consultation with the chief judge of the circuit during the initial phase of the process, the Council could order him to do so at the conclusion of the proceeding.

In cases such as the one before us where we have no doubt that the judge who is the subject of the complaint could try the case fairly on remand and where a question exists as to whether transferring the case to preserve the appearance of justice is advisable, it would seem appropriate that the circuit panel refer the case confidentially to the chief judge or the circuit council. Moreover, treatment of district judges in the situation before us through the chief judge and the judicial council would promote comity between the court of appeals and the district courts. After the initial review by the chief judge of the circuit, any decision of a special committee or the council would be a decision by both circuit and district judges, rather than by decision by only two of the thirty-five circuit judges. It is ironic that a district judge can be publicly disciplined in the complete absence of due process as a result of a panel of this court invoking its "inherent authority."

The Ninth Circuit could adopt its own rule providing for reference of this type of complaint to the chief judge for processing in the manner already provided for complaints about judges. The judicial council already has the authority to "make all necessary and appropriate orders for the effective and expeditious administration of justice within the circuit." 28 U.S.C. § 332(d)(1). Moreover, all judicial officers are required to promptly carry into effect all orders of the judicial council. 28 U.S.C. § 332(d)(2). The council has sufficient authority and adequate tools for an inquiry within the ambit of due process, whereas a panel of the circuit does not. The judicial council is authorized "to hold hearings, to take sworn testimony, and to issue subpoenas and subpoenas duces tecum." 28 U.S. C. § 332(d)(1). An appellate panel has no authority to make findings of fact.

Unless either the Ninth Circuit or Congress acts to change the procedure by which cases such as this one are reassigned to preserve the appearance of justice, district judges will continue to be subject to unjust public discipline as the result of a decision by only two of the thirty-five circuit judges. The resulting unintended strain on the relationship between the court of appeals and the district court should be eliminated.