**UNITED STATES of America, Appellant,**

**v.**

**Carl John MANTHEI, Appellee.**

**No. 91–3417.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 9, 1992.

Decided Nov. 2, 1992.

of marijuana to Mr. James Frye, a government informer. This transaction was not tape recorded. Count II alleged a second transaction which took place on October 18, 1990 involving the sale of a controlled substance to Frye. For this transaction a recording device was placed on Frye. Between the time the recorder was turned on and the alleged transaction took place, Frye had a conversation, in the absence of Manthei, with another postal employee, "Paul", who was suspected by postal inspectors of engaging in drug trafficking. The entire tape recording, including both discussions, was transcribed. The government provided a transcript to Manthei with the conversation between the government informer and "Paul" intentionally removed. In the process of removing those statements, which were not of Manthei, the government omitted the initial obscene greeting between Frye and Manthei.[1]

Manthei was arraigned on April 8, 1991, before United States Magistrate Judge Floyd E. Boline who ordered the government to provide all Rule 16 material to Manthei. On September 13, 1991, ten days before trial, the government disclosed the remaining pages to Manthei. On September 16, 1991, Manthei filed a motion and accompanying memorandum arguing for dismissal of the indictment. Manthei argued that the conversation between "Paul" and Frye should have been disclosed as "statements of the defendant" as provided by Rule 16.

## II. DISCUSSION

### A. *Standard of review*

The deleted material mainly concerned a conversation between Frye and "Paul". However, a small portion of the redacted material contained a greeting between Manthei and Frye. The two materials must be reviewed under different standards of review.

Michael W. Ward, Asst. U.S. Atty., Minneapolis, Minn., for appellant.

Robert W. Owens, Jr., Minneapolis, Minn., for appellee.

Before McMILLIAN and HANSEN, Circuit Judges, and VAN SICKLE,* Senior District Judge.

VAN SICKLE, Senior District Judge.

The government has appealed an order of the district court dismissing an indictment. The dismissal was ordered because the government delayed disclosure of an informer's tape recorded conversations. The trial judge had previously found the tape was discoverable under Fed.R.Crim.P. 16(a)(1)(A) (applicable in 1990).

We reverse.

## I. BACKGROUND

On April 3, 1991 Carl Manthei was charged in a two count indictment which alleged that Manthei had knowingly and intentionally distributed a controlled substance to a fellow United States postal employee on two occasions. Count I of the indictment alleged that on September 30, 1990 Manthei sold approximately one ounce

---

\* The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. The greeting between Frye and Manthei was transcribed as follows:

"Informant: Hey, (Deleted), lets go, (Deleted) you think I got all day or what. [sic]
C. Manthei: No, ..."
(Transcript of October 18, 1990 Tape Recording).

■ The question, concerning the conversation between Frye and "Paul", is *not* whether Rule 16 was applied properly; the question is whether Rule 16 should have been applied at all. The language of Rule 16 clearly states that only statements of the defendant are discoverable. *See infra* § IIB. Since application of Rule 16 depends on the factual determination of whether the statement was a "statement of the defendant", the standard of review as to this question should be the clearly erroneous standard. *See Amadeo v. Zant,* 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988) (clearly erroneous standard of review for factual determinations).

In *United States v. Tibesar,* this court held that the standard of review of a violation of Rule 16 of the Federal Rules of Criminal Procedure is an abuse of discretion. 894 F.2d 317, 319 (8th Cir.1990). This would be the proper standard to review the redacted greeting between Manthei and Frye.

### B. *Third Party Statements*
#### 1. Plain Meaning

■ Manthei alleges that the conversation between "Paul" and Frye was discoverable in accordance with Fed.R.Crim.P. 16(a)(1)(A) (applicable in 1990). This rule describes the information subject to disclosure as follows:

> (a) Disclosure of Evidence by the Government.
> (1) Information Subject to Disclosure.
> (A) Statement of Defendant.

Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements *made by the defendant,* or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of *any oral statement* which the government intends to offer in evidence at the trial *made by the defendant* whether before or after arrest *in re-*

*sponse to interrogation* by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged.

[Effective until Dec. 1, 1991] (emphasis added). When interpreting statutory language, the court must first look to the plain meaning of the language. *North Dakota v. United States,* 460 U.S. 300, 312–13, 103 S.Ct. 1095, 1102–03, 75 L.Ed.2d 77 (1983). The language of Rule 16 is clear. It stresses that only "statements made by the defendant" are discoverable.

This court addressed the scope of Rule 16 in discovery matters in *United States v. Hoelscher,* 914 F.2d 1527 (8th Cir.1990). "This rule does not cover testimony by a government witness as to an oral statement by a conspirator in the course of the conspiracy. It covers oral statements *made by defendant* 'in response to interrogation by any person then known to the defendant to be a government agent.'" *Id.* at 1535 (quoting *United States v. Vitale,* 728 F.2d 1090, 1093–94 (8th Cir.1984) (emphasis added)). Since this court has refused to expand Rule 16 to include the statements of a co-conspirator, which is at least admissible non-hearsay, the court will not expand the rule to include statements by an unrelated suspect. *See* Fed.R.Evid. 801(d)(2)(E) (hearsay exclusion for co-conspirator). Therefore, it was clear error to include the statements of Frye and "Paul" in the Rule 16 discovery ruling.

#### 2. Prosecutorial Misconduct

■ "Because the drastic step of dismissing an indictment is a disfavored remedy, ... a district court may properly dismiss an indictment only if the prosecutorial misconduct (1) was flagrant, ... and (2) caused substantial prejudice to the defendant." *United States v. Jacobs,* 855 F.2d 652, 655 (9th Cir.1988) (citing *United States v. Rogers,* 751 F.2d 1074, 1076–77 (9th Cir.1985), and *United States v. Carrasco,* 786 F.2d 1452, 1455 (9th Cir.1986)). "In short, absent flagrant and prejudicial prosecutorial misconduct, this court will

find that the district court's dismissal of an indictment is an abuse of its discretion." *Jacobs,* 855 F.2d at 655. The Supreme Court, in addressing governmental misconduct, held "[a]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981).

This court addressed the question of prosecutorial misconduct in the form of delayed disclosure of statements by the defendant, in *United States v. Barnes,* 798 F.2d 283 (8th Cir.1986). In that case, tape recordings were supplied by the FBI agent, Hicks, twelve days before trial, after the court had denied a motion to dismiss for failure to produce them. *Id.* at 286. The court stated that

> Hicks' delay in giving Barnes the tapes and Hicks' pretrial misrepresentations regarding the tapes do not warrant a dismissal of the charges against Barnes.... We merely hold that his conduct does not warrant the severe sanction of dismissal based on the evidence adduced to date.

*Id.* at 287. In this case, the prosecutorial misconduct, though not condoned, is not enough to warrant a dismissal of the indictment. Therefore, the trial court abused its discretion by dismissing the indictment for failing to include the greeting between Manthei and Frye.

### C. *Manthei's One Word Statement*

 Manthei's only statement was "No" as part of the greeting. *See supra* footnote 1. The proper standard of reviewing the trial court's decision concerning the excluded statements of a defendant is to determine whether the trial court abused its discretion. *United States v. Tibesar,* 894 F.2d 317, 319 (8th Cir.1990). In no way can the answer "No" in the obscene greeting between Frye and Manthei be construed to be an exculpatory statement. Therefore, it is an abuse of discretion to dismiss for failure to disclose the statement "No."

### D. *Brady Violation*

 Furthermore, Manthei cannot claim a violation of due process in accordance with *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Eighth Circuit has held that *Brady* is only violated if evidence is discovered, after the trial, of information which had been known to the prosecution but unknown to the defense. *Nassar v. Sissel,* 792 F.2d 119, 121 (8th Cir.1986). In this case, Manthei learned of the remaining parts of the transcript before trial began.

 Even if *Brady* was found to be violated the Supreme Court holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97. The evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Even if the redacted portions of the tape recording were never supplied, they are not material to the issues and would not have altered the outcome. The Ninth Circuit has held that tape recordings that did not "tend to exculpate" the defendant, did not violate *Brady. United States v. McClintock,* 748 F.2d 1278, 1287 (9th Cir.1984) (citing *Brady,* 373 U.S. at 88, 83 S.Ct. at 1197).

For these reasons, we reverse and remand the case for reinstatement of the indictment for trial.

---

McMILLIAN, Circuit Judge, dissenting.

I agree with much of the majority opinion's analysis. However, as discussed below, I cannot agree that, in light of the facts as found by the district court, the district court abused its discretion or otherwise erred in dismissing the indictment on the grounds of the government's conduct. For that reason, I respectfully dissent.

As a preliminary matter, I note that this is a government appeal in a criminal case. We have jurisdiction under 18 U.S.C. § 3731 to decide government appeals in criminal cases except where further prosecution is barred by the double jeopardy clause. Ordinarily, double jeopardy does not bar a government appeal from a ruling granting a defense motion for a mistrial or to dismiss on a basis unrelated to guilt or innocence of the offense charged, unless the government has pressured or provoked the defense into requesting a mistrial or dismissal. *E.g., Oregon v. Kennedy,* 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982); *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). In the present case, although I would argue that there was prosecutorial misconduct, the government misconduct was not intended to provoke the defense into requesting a dismissal. Thus, the double jeopardy bar does not apply.

We must first identify the reason or reasons why the district court dismissed the indictment in order to apply the correct standard of review. Op. at 125–26. "[W]hile we review a due process dismissal de novo, we review both an inherent supervisory dismissal and a statutory dismissal for an abuse of discretion." *United States v. Jacobs,* 855 F.2d 652, 655 (9th Cir.1988) (citations omitted). "A dismissal rooted in a failure to obey a discovery order lies within a court's supervisory powers." *Id.* (citations omitted); *see, e.g., United States v. Tibesar,* 894 F.2d 317, 319 (8th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990). In my view, the district court in the present case based its dismissal on both discovery and due process grounds. The district court based its dismissal in part on the government's failure to comply with discovery orders, that is, the government's failure to produce copies of all the statements of government witnesses before trial, and cited Fed.R.Crim.P. 16 in its memorandum and order. Mem. order at 2–3. However, the district court also based its dismissal of the indictment on the government's "egregious conduct," that is, the government's intentional redaction of certain evidence and its concealment of the redaction from both the defense and the district court. *Id.* at 3. For this reason, I would review each ground under a different standard of review, the discovery ground for abuse of discretion and the due process ground de novo.

The redacted evidence consisted of several comments of the government informant to a listening postal inspector and a conversation between the government informant and the third-party ("Paul") that occurred immediately before the October 18, 1990, drug transaction between the government informant and defendant, as well as the very beginning of the conversation between the government informant and defendant. *See* op. at 125 n. 1 (setting forth the very beginning of the conversation). The government informant, who had been waiting for defendant, spoke with Paul, who then left. The conversation between the government informant and Paul apparently ended just before the government informant began speaking with defendant. Thus, it does not appear that the government informant, Paul and defendant were involved in the same conversation or in partially overlapping conversations. Nonetheless, the redacted evidence indicates that Paul was acquainted, indeed arguably familiar, not only with the government informant but with defendant and drug trafficking as well. The conversations between the government informant and Paul and between the government informant and defendant were recorded on one tape.

I agree with the majority opinion that the redacted evidence was not, strictly speaking, subject to disclosure under Fed.R.Crim.P. 16(a)(1)(A) or as exculpatory material under *Brady v. Maryland,* 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). *See* op. at 125–26, 27. As noted above, the redacted evidence consisted of a conversation between the government informant and Paul and thus was not a statement "made by the defendant." For this reason, it was not subject to discovery under Fed.R.Crim.P. 16(a)(1)(A). Whether the redacted evidence was exculpatory material under *Brady v. Maryland*

is a closer question. However, even assuming for purposes of analysis that the redacted evidence was exculpatory material, the redacted evidence was in fact disclosed before the trial was scheduled to begin and thus would have been available to the defense during trial. The redacted evidence was Jencks material (statement made by government witness or prospective government witness other than the defendant), but the production of Jencks material cannot be compelled until the witness has testified on direct examination in the trial of the case. *See United States v. Taylor,* 707 F.Supp. 696, 701 (S.D.N.Y. 1989) (statements of defendant intermixed with statements of prospective government witnesses are Jencks material; court cannot compel pre-trial production, but encourages pre-trial production as matter of sound trial management).

However, I would characterize the district court's decision as more broadly based on the government's failure to comply with discovery orders, specifically the government's redaction of certain evidence and its subsequent concealment of the redaction. Mem. order at 3, *citing* Fed.R.Crim.P. 16(d)(2). Dismissing an indictment is a disfavored remedy for prosecutorial misconduct. *E.g., United States v. Jacobs,* 855 F.2d at 655. Nonetheless, I would hold the district court did not abuse its discretion or otherwise err in dismissing the indictment as a sanction for the government's conduct in the present case. I would distinguish the present case from the typical failure-of-discovery case on the basis of the district court's findings of bad faith and prejudice to the defense.

The record indicates that there had been many discovery problems in the present case and several related cases. On September 4, 1991, at the end of a plea hearing in one of the related cases, the district court expressly referred to the on-going discovery problems in the present case and cautioned counsel that all *Brady* and Jencks material was to be disclosed before trial. Defense counsel, the magistrate judge and the district court understood that the government had produced or would produce all the materials, including Jencks material, subject to disclosure before trial. (Indeed, during the motion hearing, the government indicated that it had adopted an open-file policy. Tr. at 15.) On September 9, 1991, while reviewing other materials, defense counsel noticed the discrepancy between the government's copy of the transcript and the copy of the transcript that had been provided to the defense in April 1991. On September 13, 1991, the government notified defense counsel that the earlier transcript was not complete and provided defense counsel with a copy of the complete transcript.

At the September 23, 1991, hearing on the defense motion to dismiss the indictment, the government argued that the redacted evidence was not Rule 16 or *Brady* material and that, if it was Jencks material, it had been disclosed at least three days before trial, as required by the local rules. Tr. at 10. The government also argued that it had redacted the conversation in good faith in order to protect the government informant and the integrity of the ongoing investigation and that it had not intended to conceal the redaction. *Id.* at 13, 16–17. In its oral findings from the bench, the district court noted that the propriety of any redaction could have been considered by motion and in camera review, *id.* at 30, and disapproved of the government's unilateral redaction, *id.,* and its continued "hiding" of materials. *Id.* at 11. In its written memorandum and order, the district court found that the government intentionally photocopied the transcript in such a way as to conceal the fact that part of the conversation had been redacted, then concealed the redaction, and disclosed the complete transcript only after defense counsel inadvertently discovered the redaction. Mem. order at 2. The district court also found that the failure to provide the redacted evidence was prejudicial to the defense. *Id.* (noting that theory of defense was entrapment; defense should have been allowed to investigate Paul and his knowledge, if any, of the circumstances surrounding the drug transaction).

I would affirm the district court's dismissal as an appropriate sanction for the government's flagrant and prejudicial

abuse of discovery or on due process grounds. The district court was not obliged to tolerate such egregious conduct on the part of the government. As Justice Sutherland observed in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935),

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he [or she] is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He [or she] may prosecute with earnestness and vigor—indeed, he [or she] should do so. But, while he [or she] may strike hard blows, he [or she] is not at liberty to strike foul ones. It is as much his [or her] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.