People v Guevarez (2026 NY Slip Op 50045(U))

[*1]

People v Guevarez

2026 NY Slip Op 50045(U)

Decided on January 12, 2026

Criminal Court Of The City Of New York, Bronx County

Goodwin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 12, 2026
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

againstR. Guevarez, Defendant.

Docket No. CR-006821-25BX

For the Defendant:Ben MackinThe Bronx DefendersFor the People: 
Bronx ADA Nikki Vlahos

David L. Goodwin, J.

In 2019, the Legislature enacted "sweeping" reforms to New York's discovery laws, "expand[ing] and restructur[ing] disclosure obligations in criminal cases" and, for the first time, tethering the prosecution's "discovery obligations to trial readiness" under New York's statutory speedy trial rule, C.P.L. § 30.30. People v. Bay, 41 NY3d 200, 204, 208 (2023). Compared to those reforms, the recent August 2025 revisions to Articles 30 and 245 amounted to fine-tuning what was already in place. Yet in their wake, both the defense bar and prosecution have raced to frame the relatively modest (and sometimes ambiguous) statutory changes in a way favorable to their respective sides.
The impact of those revisions takes center stage in this dispute over an otherwise-straightforward criminal mischief and menacing prosecution. The People declared ready for trial before they had obtained and disclosed body-worn camera (BWC) footage from both the scene of the incident and the precinct where defendant R. Guevarez [FN1]
was arrested. Guevarez now contends that this shortcoming requires invalidation of the People's certificate of compliance [*2](COC) and, under § 30.30, dismissal of the accusatory instrument on statutory speedy trial grounds.
The threshold procedural issue is whether the defense adequately conferred with the People in good faith on the disputed discovery issues before filing this motion. Assuming without deciding that any conferral requirement imposed by the revised Article 245 applies in a case like this one—conferral was ongoing as the revisions took effect, with the motion being filed afterwards—and assuming that inadequate defense conferral can operate as a procedural bar, the record here reflects that the defense's conferral passed muster. The defense actively sought to resolve discovery issues, several of which were in fact resolved, and did not confer simply to tee up a future motion. The defense motion is thus not procedurally barred.
The main merits issue is whether the People have met their burden of showing that they exercised due diligence in discharging their discovery obligations, despite their failure to timely obtain and disclose the BWC footage. On the particular facts of this case, the answer is "no"; the missing BWC footage was obvious and relevant to the case, and the People have not otherwise made a record or raised arguments that suffice to demonstrate due diligence.
Finally, the remedy issue is whether, under the revised statute, invalidation of the COC and (if the speedy trial clock has run) dismissal remains the appropriate remedy for a lack of due diligence. The answer is "yes," as the statutory revisions did nothing to decouple § 30.30 from the People's discovery obligations or to change the well-established rule that dismissal is the remedy for § 30.30 violations. The People's reliance on case law from other jurisdictions on discovery sanctions is misplaced because those jurisdictions have not tethered their statutory speedy trial rules to discovery compliance. 
Accordingly, for the reasons set forth below, the People's COC is deemed INVALID and, the § 30.30 speedy trial time having run, the accusatory instrument is DISMISSED pursuant to C.P.L. §§ 30.30(1) and 170.30(1)(e).I. Background
The Charges and ArraignmentVia a March 10, 2025 accusatory instrument, defendant Guevarez was charged with criminal mischief in the fourth degree and harassment in the second degree under P.L. §§ 145.00(1) and 240.26(1). That morning, according to the complaining witness, Guevarez had broken a glass door and destroyed property at the bakery where he worked. Later that day, Guevarez was arrested at the precinct.
Guevarez was arraigned on March 11, the same day that the accusatory instrument was filed with the court.
Declaration of Readiness and COCThe People filed their COC and declared ready for trial on May 7, 57 days after the case had commenced. According to the COC, the People had disclosed, among other things, [*3]numerous 911 recordings, activity logs for five police officers, NYPD paperwork, a BWC checklist, the case summary, a photograph of the allegedly damaged door, and five BWC recordings. The COC did not mention anything about missing or outstanding BWC footage.
Conferral over the Missing BWC FootageOn June 13 and June 16, defense counsel emailed the assigned ADA to flag five potential discovery issues, only one of which is relevant here: the defense had not received any BWC footage from the scene of the incident. Further, the BWC footage from the arrest that had been disclosed revealed that many other officers were in the precinct with their cameras activated at the time Guevarez was arrested and processed. See Defense's Mot., Ex. A at 6—7.
The parties conferred on this issue (and others) over the next month. The assigned ADA responded on June 30, stating that she had shared all BWC footage that she "ha[d] access to" and had previously requested all BWC footage for officers who were "a part of this arrest," although the ADA disputed that the BWC footage of officers who were "not part of the arrest"—such as officers identified by the defense who were simply present in the precinct—was discoverable, because it was not related to the subject matter of the case. Id. at 6. The email did not, however, clearly reflect any new efforts to obtain BWC footage.
Defense counsel replied on July 15 to ask, among other things, what the People had done to try to get the BWC footage. Id. at 5. The next day, the assigned ADA responded that she had shared all of the BWC footage "tagged with this arrest number," but had not obtained any BWC footage from the incident location because Guevarez had been arrested at the precinct, and "therefore, there is no BWC from the location of the incident as officers were not present [there]." Id. at 4. However, the ADA also observed that BWC footage from some of the officers had not been properly tagged; after an investigation, she "just now" learned who those officers were, and was now sharing the relevant footage. Id.[FN2]

Later in the day on July 16, the defense flagged a statement in the case summary that had been disclosed as part of the earlier discovery production: "By the time the Police officers arrived, the defendant and his family had already left." Id. at 3; see also Defense's Mot., Ex. C (case summary). Defense counsel took this to mean that officers had responded to the scene of the incident and, by extension, that BWC footage would be available.
Across three emails from the middle of August, defense counsel indicated that he had received the BWC footage from just one officer who responded to the scene of the incident, and [*4]was still missing the BWC footage of several others who also had responded.[FN3]
Counsel also observed that the BWC footage from within the precinct was relevant to the case, as it depicted officers speaking with the complaining witness's wife about the incident. The assigned ADA responded that she had shared all of the BWC footage to which the People had access and which had been tagged and uploaded by the NYPD. Id. at 1.
Motion ScheduleThis motion schedule was set on September 4, after a discovery conference. The defense filed its motion on October 27, after seeking and obtaining a good-cause extension. The People responded on November 24 and the defense replied on December 15. The motion is fully briefed and ripe for decision.

II. The Parties' Dismissal Arguments
Through counsel, Guevarez argues that the COC [FN4]
must be invalidated, and the accusatory instrument dismissed under § 30.30, because the People did not timely disclose (1) the BWC footage from the precinct, which (counsel affirms) captured the processing of his arrest, conversations with members of his family about the incident, and a positive identification by the complaining witness; and (2) the BWC footage from the scene of the incident, which (counsel affirms) depicted officers responding to several 911 calls, speaking with the complaining witness and others, and conducting a canvas of the area. Defense's Aff. ¶ 23. In his view, these materials were plainly discoverable and relevant to the case, and their absence should have been apparent to a diligent prosecutor.
Specifically, Guevarez points out that if the People reviewed their own discovery, they would have realized that numerous officers had BWC activated at the precinct, and that their own case summary reflects that officers reported to the scene of the incident. Despite this, the People maintained until August—at least 106 days after arraignment—that footage from the [*5]scene of the incident did not exist, despite defense counsel having raised the issue early in the conferral and having referenced the case summary in a mid-July email. 
Attached to the defense motion is the conferral email chain between defense counsel and the People regarding outstanding discovery. See Defense's Mot., Ex. A. Defense counsel affirms that this reflected "efforts to confer" with the People about "the missing discovery" that is now the subject of his motion. Defense's Aff. ¶ 25. Defense counsel also affirms that due to the People's "refusal" to confer about the missing and outstanding discovery, no accommodation could be reached. Defense's Aff. ¶ 28. 
In their response, and following from the above, the People raise a threshold procedural objection: defense counsel failed to make timely, good-faith efforts to resolve this discovery dispute before filing his motion. Relying on the August 2025 amendments to C.P.L. § 245.50(4)(c), which now requires all COC challenges to be accompanied by an affirmation of good-faith conferral about the underlying discovery dispute, the People assert that the Legislature "intended to import" rules and procedures associated with civil practice through those amendments. People's Resp. Mem. at 13. Judged under civil practice rules and standards, defense counsel's conferral attempts fell short because counsel did not "seek to actually resolve any of these issues" after the People explained that some of the BWC footage was "wholly unrelated to this matter," and instead made "pro forma efforts" at conferral as a prelude to "filing a motion to challenge the COC." Id. at 13. The People do not, however, attack the adequacy of defense counsel's actual § 245.50(4)(c) affirmation.
On substance, the People defend their diligence in performing their discovery obligations. They argue that they "provided a robust discovery package to the defense," and maintain that the BWC footage from the precinct is wholly unrelated to the case and involved only officers who were not a part of Guevarez's arrest and were just present as a regular part of their shifts. People's Resp. Mem. at 9. Regarding their outreach, the People affirm and argue that they made several requests for discovery more generally and for the BWC footage in particular before filing their COC, although they do not attach the actual emails or other records of their correspondence outside of the affirmation itself. See People's Resp. Aff. ¶¶ 7—25.
The People also rely on their timely and responsive post-readiness efforts to address defense counsel's discovery objections about the BWC footage from the scene. After having made requests for the BWC footage via email, phone call, and text message on seven occasions before filing their COC, the People followed up with the NYPD nine times before receiving (and disclosing) additional BWC footage in August. People's Resp. Mem. at 10.
According to the People, Guevarez also has not shown sufficient prejudice flowing from this issue to justify invalidating the COC. He received the incident-scene BWC footage in time to use it for his trial, and the other footage is irrelevant because it does not relate to the case. Id. at 15.
Finally, on remedies, the People argue that dismissal is no longer the appropriate or default remedy for a lack of diligence or good faith that, under the old Article 245, would [*6]otherwise invalidate a COC and lead to potential dismissal. Relying on a signing statement/press release [FN5]
from the Governor "outlining th[e] legislative intent" behind the August 2025 revisions—which included "eliminat[ing] dismissals for minor or technical violations or for disclosure errors that caused no substantial prejudice to the defense"—the People contend that "in amending Article 245, the Legislature gave courts an alternative to invalidation of a COC (and the speedy trial dismissal that often results when a COC is invalidated)," such as imposing discovery sanctions pursuant to C.P.L. § 245.80. Id. at 5—6. The People also point to pre-2020 New York Court of Appeals decisions, as well as case law from other jurisdictions—Commonwealth v. Shaffer, 712 A.2d 749 (Pa. 1998), People v. Uribe, 132 Cal. Rptr. 3d 102 (Cal. Ct. App. 2011), and United States v. Jacobs, 855 F.2d 652 (9th Cir. 1988)—to support their argument that dismissal as a discovery sanction should be reserved for egregious circumstances only. People's Resp. Mem. at 7—8.
In reply, Guevarez disputes the People's characterization of his pre-motion conferral, contending that defense counsel made serious attempts to confer about a variety of different discovery issues in a timely fashion after receiving the COC and timely clarified objections upon requests by the People. Some issues were actually resolved through conferral, and are not now the subject of the motion. Defense's Reply at 9—10 (pdf pag.). 
Guevarez also maintains that the People did not exercise due diligence. Among other things, the discovery in the case was not particularly complex and the People did not self-report any errors, as the belatedly disclosed discovery pertained to issues pointed out by defense counsel during conferral. Moreover, at least six segments of BWC footage from the scene of the incident remain outstanding; the defense has received only one segment, not six as the People claim. Defense's Reply at 1— 2. And the People's reliance on how many times they reached out to the NYPD is of limited use because the People did not specify how they followed up, nor did they provide any exhibits to show that they asked about the specific missing BWC footage; Guevarez cites trial court decisions such as People v. Edwards, 77 Misc 3d 740 (N.Y.C. Crim. Ct., Bronx Co. 2022) (Zimmerman, J.), for the proposition that generalized outreach is insufficient. Id. at 7—8.
Finally, as to prejudice, Guevarez asserts that the BWC footage at the precinct is relevant to the case because it reflects "never-before-seen footage" of an interaction with one of Guevarez's family members who "informs officers that the complaining witness had pulled a knife on Mr. Guevarez and that, in fact, they were at the precinct to make a report against the complaining witness," which demonstrated that the precinct footage "did not merely capture routine precinct activity." Id. at 7—8 (internal quotation marks omitted).[FN6]
 The belated disclosure [*7]also prejudiced him because he learned late in the case about "a new witness, impeachment material for existing witnesses, and new images of the allegedly damaged door for the first time," which hampered the defense's ability to develop a theory of the case. Id. at 9.

 III. Legal Standard
In a case like this one, where the top count is a misdemeanor punishable by a custodial sentence of more than three months, the People must be ready for trial within 90 days. C.P.L. § 30.30(1)(b). If they are not ready within that 90-day window, the accusatory instrument must be dismissed on motion by the defense. C.P.L. §§ 30.30(1)(b), 170.30(e); People v. Labate, 42 NY3d 184, 190 (2024).
Under the current discovery laws, the People must comply with their discovery obligations before declaring ready for trial. See C.P.L. § 30.30(5)(a). The People do so by, among other things, filing a COC. A defense challenge to a COC must be made by motion, id. § 245.50(4)(a), and a challenge to the validity of a COC must be
accompanied by an affirmation by the moving party that, after the filing of the opposing party's certificate of compliance, such moving party timely conferred in good faith or timely made good faith efforts to confer with the opposing party regarding the specific and particularized matters forming the basis for such challenge, that efforts to obtain the missing discovery from the opposing party or otherwise resolve the issues raised were unsuccessful, and that no accommodation could be reached.
Id. § 245.50(4)(c).A COC is invalid if the People have not exercised due diligence and good faith in fulfilling their discovery obligations. C.P.L. §§ 30.30(5)(a)—(b), 245.50(6). This, in turn, requires the People to make "reasonable" efforts and inquiries to comply with their statutory obligations. People v. Bay, 41 NY3d 200, 211 (2023). Factors relevant to diligence include:
the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.C.P.L. § 245.50(5)(a). These factors must be assessed holistically, rather than line-by-line, with [*8]no one factor or shortcoming being determinative. Id. § 245.50(5)(b); People v. Cooperman, 225 AD3d 1216, 1220 (4th Dept. 2024). The People bear the burden of establishing their own diligence. Bay, 41 NY3d at 213.

 IV. Discussion
a. Assuming that the conferral requirements of the revised Article 245 apply here, and that an inadequate conferral can bar consideration of the merits of a COC challenge, the record reflects that defense counsel timely conferred in good faith.Relying on C.P.L. § 245.50(4)(c), the People mount a threshold challenge to the adequacy and good-faith basis of the defense's pre-motion conferral—a challenge that the People characterize as a procedural bar. See People's Resp. Mem. at 13 ("Even if defendant's challenge to the validity of the COC is reviewable, it lacks merit." (emphasis added)). In their view, defense counsel's efforts at conferral were merely "pro forma" and made for the "ultimate purpose" of filing a COC challenge motion. Id. Because the efforts at conferral were inadequate and not made in good faith, Guevarez's motion should not be reviewed on the merits.
This issue, as framed by the People, comes with two threshold procedural questions of its own.
The first is how any post-August-7 conferral requirement should apply when most of the conferral took place before August 7, some conferral occurred after, and the defense motion was filed well after the effective date of the new § 245.50(4)(c). For the sake of expediency, the discussion that follows assumes, without deciding, that any conferral requirement imposed by the revised § 245.50(4)(c) would apply in full.
The second is whether the adequacy of conferral under the new § 245.50(4)(c) can present a procedural bar at all, as opposed to being a merits issue.[FN7]
Section 245.50(4)(c) requires that a motion challenging a COC be accompanied by an affirmation of good-faith conferral. But [*9]the requirement of conferral arises only in the context of the statutory directive that a motion be accompanied by an affirmation. The revised Article 245 does not otherwise direct the parties to confer, or prescribe any procedural or substantive requirements beyond permitting parties to "confer informally." Id. § 245.50(4)(c). In other words, while § 245.50(4)(c) requires the challenging party to file an affirmation of conferral, the statute does not independently require (beyond the implication of the affirmation itself) that conferral occur or take any particular form.
In a related context, the Court of Appeals recently concluded that a different speedy-trial certification required only that a party certify compliance, not that the underlying certification be accurate. Under C.P.L. § 30.30(5-a), a statement of trial readiness is not valid unless "the prosecuting attorney certifies that all counts charged in the accusatory instrument" are facially sufficient, and that those that are not "have been dismissed." In People v. Williams, — NY3d —, 2025 NY Slip Op. 06535 (2025), the Court of Appeals held that § 30.30(5-a) mandated only the act of certification, not "an accurate certification," because the Legislature "could have, but did not, [] tie the accuracy of certification pursuant to subdivision (5-a) to the People's trial readiness." Id. at *3. Thus, so long as the People file a (5-a) certification, they have complied with the statutory requirement to do so, even if the certification is ultimately wrong because one or more counts is facially insufficient and has not been dismissed.
The logic of Williams may extend to any conferral requirement of § 245.50(4)(c). As it did with the certification requirement in C.P.L. § 30.30(5-a), the Legislature required that the COC challenge motion be accompanied by an affirmation pursuant to § 245.50(4)(c), yet did not specify any penalties for the affirmation being inaccurate—nor did the Legislature enact a parallel provision requiring the parties to actually confer. Were Williams to apply here, a COC-challenge motion would be procedurally adequate if accompanied by a facially adequate affirmation, with no procedural penalty if the affirmation is erroneous. The adequacy of conferral itself could remain a merits issue relevant to the People's diligence, as the nonexhaustive diligence-factor list of § 245.50(5)(a) makes plain, but it would not be a procedural bar.
As the parties have not addressed that issue in their briefing, this decision assumes that the adequacy of the conferral itself can be a procedural bar. Even so, the conferral here was sufficient to permit review of the merits.[FN8]

As revealed by the attachments to Guevarez's motion, defense counsel flagged discovery issues within a reasonable time after receiving the COC, engaged in a productive back-and-forth with the People, and was able to resolve certain issues without seeking court intervention. For example, the People could not obtain surveillance footage before it was deleted, so Guevarez did not raise that issue in his motion. The emails also showed that the conferral reached a point where court intervention was required because the parties were at a standstill because the People maintained that they had turned all BWC footage in their possession, while defense counsel asserted that some was still missing. 
Accordingly, Guevarez has demonstrated that defense counsel conferred in good faith prior to seeking court intervention. His COC challenge will thus be assessed on the merits.
b. The People did not meet their burden of showing due diligence.On the merits, the People still bear the burden of proof under the revised Article 245 of showing that they exercised due diligence in connection with their discovery obligations. Bay, 41 NY3d at 213. Under the unusual circumstances of this case, they have not done so. Accordingly, their COC will be invalidated.
The main unusual circumstance is that the People devote little real estate to their substantive argument on diligence, which spans pages 8 to 11 and 13 to 15 of a 15-page memorandum of law, with the balance dedicated to arguments about legal standards and the defense's lack of good-faith conferral. As developed across the relevant portions of their brief, the People's argument in favor of their diligence is premised on the "robust" discovery package provided to the defense, although there is no explanation of why it was "robust," People's Resp. Mem. at 9; the lack of relevance or discoverability of the BWC footage sought by the defense, id. at 9—10; the People's diligence upon being apprised of the defense's discovery objections, id. at 10—11, 13—14; and the alleged lack of prejudice to the defense, id. at 14—15. The People also (somewhat indirectly) rely on their extensive outreach prior to declaring ready.
Beginning with that pre- and post-readiness outreach: as Guevarez points out, an occasional lack of specificity in the People's affirmation, combined with the absence of supporting exhibits, complicates an assessment of their diligence. For instance, and regarding pre-readiness efforts, the People specify when they requested video surveillance from the scene, People's Resp. Aff. ¶¶ 9, 23; Giglio documents, id. ¶ 11; and 911 materials, id. ¶¶ 12, 22. But BWC footage is presented as part of a general request—for instance, "[o]n April 2, 2025, the undersigned ADA requested all discovery, including any and all Body-Worn Camera for this incident and arrest." Id. ¶ 13. There appears to be no pre-readiness request dedicated to tracking down BWC footage, and if any of the relevant outreach was dedicated to obtaining potential [*10]BWC footage—like the April 23 follow-up "regarding the discovery that the undersigned ADA had not yet received," id. ¶ 17, or the May 2 request to the arresting officer about "the outstanding discovery," id. ¶ 21—the People do not say, nor do they attach any relevant exhibits.[FN9]
In other cases, both trial and appellate courts have counted a similar lack of specificity against the People. See, e.g., People v. Guzman, 75 Misc 3d 132(A), 2022 NY Slip Op. 50445(U), at *4 (App. Term, 9th & 10th Jud. Dists. 2022) ("[T]he People provide no information as to what they initially requested of the police, when they requested those items from the police, or when the police sent them the packet."); People v. Edwards, 77 Misc 3d 740, 747 (N.Y.C. Crim. Ct., Bronx Co. 2022) (Zimmerman, J.) ("A general request for discovery does not due diligence make."); cf. People v. Kents, 86 Misc 3d 1206(A), 2025 NY Slip Op. 50880(U), at *5 (N.Y.C Crim. Ct., Bronx Co. 2025) (Krompinger, J.) (single general request for discovery did not amount to reasonable efforts).
Meanwhile, the People responded to the defense's June 13 objections on June 30, yet they do not appear to have reached out to the arresting officer until July 16, more than a month after the initial objections. Id. ¶¶ 13, 32.[FN10]
This is supported by the copy of the June 30 email attached to the defense motion, which does not clearly reflect any additional outreach or inquiries by the People, as well as the supplemental COC, which indicates a first post-objection conferral date of July 16. See Defense's Mot., Ex. A at 5—6; id., Ex. D at 2.
Thus, while the People conducted generalized outreach, Guevarez makes a persuasive argument that they did not assess whether BWC footage from either the precinct or scene might be relevant to the case until after certifying ready. And, once the People did so, they did not conduct responsive outreach to the defense's objections until well over a month after receiving those objections. Guevarez also persuasively argues that BWC footage from the scene remains outstanding because additional officers responded alongside the one officer whose BWC footage the People did share. 
The People's reliance on their "robust" discovery is also complicated to assess—and since the People bear the burden of demonstrating their diligence, an ambiguous record does not help them. As a preliminary issue, neither party attached the COC or automatic disclosure form, [*11]even though both are essential in a case like this. Regardless, an assessment of the papers in the court file reveals the People provided the routine materials generated by the NYPD for this relatively straightforward case. As Guevarez argues, it should not have been difficult for the People to know to turn over all of the BWC footage. Comparing the volume of discovery provided and the volume of discovery outstanding, at least 15 segments of BWC footage were belatedly disclosed, and at least six may remain outstanding. Without knowing more, it is difficult to estimate the volume of what remains outstanding and the volume of what was belatedly disclosed.
Guevarez also persuasively argues that the discovery was both relevant to the case and not duplicative. He contends, and the People do not dispute, that the BWC footage from the precinct showed the complaining witness identifying Guevarez, as well as statements from the complainant and statements from Guevarez's family members about the incident—all related to the case and certainly discoverable. The People assert that the material was not prejudicial, but do not explain why beyond an alleged lack of impact from the delayed disclosure—which Guevarez also disputes, pointing to "a new witness, impeachment material for existing witnesses, and new images of the allegedly damaged door for the first time." Defense's Reply at 9.
The People's responses to Guevarez's objections were also somewhat wanting. The People at first declined to turn over the precinct BWC footage on grounds of nondiscoverability; indeed, it is unclear whether the eventual disclosure of the footage (which Guevarez describes as relating to the case) was done intentionally for that reason.
In sum, the five main lines on which the People defend their diligence are narrow and underdeveloped. In the particular context of this case, Guevarez has the better argument as to each. Because the remaining relevant diligence factors are either neutral or weigh in Guevarez's favor, the People have not met their burden of showing due diligence under a holistic assessment of all relevant § 245.50(5)(a) factors.
c. Invalidation of the COC and (if the § 30.30 clock has run) dismissal of the accusatory instrument remains the appropriate remedy under the revised Articles 30 and 245 when the People have not met their burden of demonstrating due diligence.Relying primarily on the Governor's signing statement/press release, out-of-state (and pre-2019) decisions on dismissal as a discovery sanction of last resort, and the availability of alternative sanction remedies under C.P.L. § 245.80, the People argue that invalidation of the COC and dismissal of the accusatory instrument is no longer the presumptive remedy when the People have not met their due-diligence burden. But these arguments do not persuade, and at least some have already been rejected. Accordingly, invalidation of the COC and dismissal of the accusatory instrument remains the presumptive outcome if the People have not met their burden of showing due diligence.
As an initial matter, Bay squarely rejected the dismissal-as-last-resort/alternative-sanction-under-§ 245.80 argument that the People now raise. As Bay explained, the statutory [*12]scheme—unchanged by the August 2025 amendments—tethers the People's discovery compliance to § 30.30 and "requires dismissal if the People did not file a proper COC and the speedy trial period has run." Bay, 41 NY3d at 214. While the People assert that "in amending Article 245, the Legislature gave courts an alternative to invalidation of a COC," People's Resp. Mem. at 6, they provide no evidence of any of these alternatives beyond § 245.80, which was left unchanged by those amendments; in particular, § 245.50(3), which ties trial readiness to the filing of a COC, was almost unchanged by the August 2025 revisions, save for the replacement of the word "proper" with "valid." And while the People also rely on § 245.50(5)(c), that (new) section specifically addresses discovery sanctions under § 245.80 upon a finding of a "valid" COC, not a finding of an invalid COC. See also Bay, 41 NY3d at 214 ("On the other hand, if the court deems a COC proper (including in a case where there was late disclosure but the court concludes the People exercised due diligence), CPL 245.80 sets forth the available remedies for the belated disclosure.").
The People point to the Governor's signing statement/press release on the August 2025 amendments as indicative of the legislative intent to eliminate dismissal except as a sanction of last resort. See People's Resp. Mem. at 5—6. But while "postenactment statements[[FN11]
] of the Governor may be examined in an analysis of legislative intent and statutory purpose," their probative value is limited; the executive is not the Legislature, and the Governor's represents only one of many viewpoints on the new legislation. Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 NY2d 577, 586—87 (1998). But see United States v. Story, 891 F.2d 988, 994 (2d Cir. 1989) (giving weight to a presidential signing statement because "the Executive Branch participated in the negotiation of the compromise legislation"). A signing statement/press release also cannot override the "words of the statute," which remain "the best evidence of the Legislature's intent." Riley v. Cnty. of Broome, 95 NY2d 455, 463 (2000) (emphasis added); see also Williams, 2025 NY Slip Op. 06535, at *2 (observing that "the clearest indicator of legislative intend is the statutory text" (internal quotation marks and citation omitted)); People v. Hernandez, — NY3d 
—, 2025 NY Slip Op. 05874,at *2 (2025) (same).
That statutory text, both before and after August 2025, does not support the People's argument or otherwise reveal an intent by the Legislature to remove dismissal as the presumptive remedy. As Bay made plain, invalidation of the COC and dismissal of the accusatory instrument was the appropriate remedy under the pre-August-2025 version of the statute, and none of the statutory changes appears to have upset that framework. To be sure, there are plenty of new burdens on the way to showing noncompliance—the additional certification requirements in C.P.L. § 245.50(4)(c) discussed above, for instance, and the growing recognition that productive post-readiness conferral and efforts by the People can make up for errors or incomplete disclosures as of the time readiness was declared. But the People point to no clear evidence that dismissal is now a disfavored remedy if, despite those new burdens, a court concludes that the People have not shown due diligence in discharging their discovery obligations. 
Finally, the People's reliance on discovery-sanction and misconduct decisions from other jurisdictions (and pre-discovery-reform decisions from New York) is misplaced because those jurisdictions, like this one prior to discovery reform, do not tether discovery compliance to statutory speedy trial rights. See Commonwealth v. Shaffer, 712 A.2d 749, 752 (Pa. 1998) (addressing dismissal as a discovery sanction); People v. Uribe, 132 Cal. Rptr. 3d 102, 107—08 (Cal. Ct. App. 2011) (addressing a court's power to dismiss an accusatory instrument "to address outrageous government conduct" such as a prosecutor's "false testimony"); United States v. Jacobs, 855 F.2d 652, 655 (9th Cir. 1988) (addressing the narrow grounds upon which it is appropriate for a federal court to dismiss an indictment for prosecutorial misconduct). Ours does, at least for now.[FN12]

In sum, until the Legislature decides to once again decouple § 30.30 from discovery compliance in whole or in part—maybe an if, maybe a when—dismissal will remain the appropriate remedy when, due to the People failing to meet their burden of demonstrating due diligence, the People's COC is invalidated and the § 30.30 clock has run beyond the permitted statutory period.

* * *
In sum, the People have not met their burden, see Bay, 41 NY3d at 213, of establishing due diligence under the revised Articles 30 and 245. Their COC is DEEMED INVALID, and as a result, did not stop the § 30.30 clock. Since at least 91 days elapsed before any valid statement of readiness—the earliest valid statement of readiness would have been on August 11, 153 days after commencement—and because the People do not rely on any other statutory exclusions, dismissal is "require[d]." People v. Labate, 42 NY3d 184, 190 (2024).
Accordingly, the branch of Guevarez's motion seeking dismissal is GRANTED. The accusatory instrument is DISMISSED pursuant to C.P.L. §§ 30.30(1) and 170.30(1)(e). The remainder of Guevarez's motion is DENIED as academic.
Sealing of the case is STAYED for 30 days. Defense counsel is directed to serve upon [*13]the People a copy of this order along with a notice of entry.
Dated: January 12, 2026Bronx, NYDavid L. GoodwinJudge of the Criminal Court

Footnotes

Footnote 1:The version of this decision submitted for electronic publication has been lightly redacted to remove certain identifying information.

Footnote 2:The email also contained what appeared to be an intended response to defense counsel's question about when the BWC footage had been requested, but it was incomplete and ended mid-sentence. Id.

Footnote 3:Guevarez observes in his motion that 20 BWC videos were shared at this time, of which 14 had not been shared previously and six were duplicates. See Defense's Aff. ¶ 19.

Footnote 4:Guevarez also attacks the validity of the supplemental COC. However, since the People do not dispute that 90 days of chargeable time would have elapsed if the original COC were invalid, there is no need to address the validity of the supplemental COC.

Guevarez also contends that the post-August-2025 due diligence standard should not apply to his motion. As this argument has already been rejected for the reasons set forth in People v. Guevera, 87 Misc 3d 1238(A), 2025 NY Slip Op. 51825(U), at *2 (N.Y.C. Crim. Ct., Bronx Co. 2025); People v. Delvalle, 87 Misc 3d 1231(A), 2025 NY Slip Op. 51753(U), at *7 (N.Y.C. Crim. Ct., Bronx Co. 2025); and People v. Jefferson M.Q., — Misc 3d —, 2025 NY Slip Op 25224, at *2—3 (N.Y.C. Crim. Ct., Bronx Co. 2025) (Bahr, J.), it will not be addressed further here.

Footnote 5:
https://www.governor.ny.gov/news/fighting-recidivism-governor-hochul-announces-reforms-fy26-state-budget-improve-discovery.

Footnote 6:This appears in the memorandum of law, but not the affidavit; as an unsworn argument by an attorney, it is of limited evidentiary value. See People v. Rodriguez, 77 Misc 3d 23, 25 (App. Term, 1st Dept. 2022). It is recited above to present a full picture of the defense's argument, but its presence or absence is not dispositive.

Footnote 7:The presence and adequacy of a conferral affirmation, by contrast, presents a clear procedural requirement under the revised § 245.50(4)(c), which mandates that any COC challenge "shall be accompanied" by an affirmation of timely, good-faith conferral regarding the specific and particularized matters forming the basis of the COC challenge and that attempts to resolve the issue were unsuccessful. But the People focus their argument on the adequacy of the conferral itself, not on the adequacy of defense counsel's affirmation. In any event, to the extent that that the affirmation might be vulnerable to challenge as to its form—it does not explicit say that that counsel's efforts at conferral were in good faith, although that is the implication—the record otherwise establishes good faith, as discussed above the margin. See People v. Iza, — Misc 3d —, 2025 NY Slip Op. 25231, at *3 (N.Y.C. Crim. Ct., Kings Co. 2025) (Whitehair, J.) (supplementing an incomplete affirmation with a review of the record to conclude that conferral efforts were adequate under § 245.50(4)(c))

Footnote 8:There is no need at this time to address and resolve the People's argument that the revisions to Articles 30 and 245 were intended to import civil-discovery conferral rules into criminal practice—an argument that has been raised in many of the People's post-August-7 response briefs. In its present form, this argument is premised on the use of the confer-in-good-faith language from the affirmation requirement of § 245.50(4)(c); observing that the Uniform Civil Rules for the Supreme and the County Court also require the parties to confer and attempt to resolve issues before seeking court intervention, see 22 N.Y.C.R.R. § 202.20-f(a), the People infer that the Legislature's use of similar language in § 245.50(4)(c) reflected an intent to conform criminal law discovery and conferral practice to its counterpart in civil practice. See People's Resp. Mem. at 11—13. While the People may be right about the Legislature's intent, a proposal for such sweeping changes should be premised on more evidence than the use of a single similar phrase in an affirmation requirement.

Footnote 9:The People also appear to rely on the NYPD's "tagging" of the footage as a step necessary to making it available—and, by implication, a step for which the NYPD bears responsibility. While tagging may be the standard method by which BWC footage is associated with a case and comes into the possession of the prosecution, untagged BWC footage held by the NYPD is still in the People's constructive possession under C.P.L. § 245.20(2).

Footnote 10:The record does not clarify whether the People were aware of the precinct BWC footage. The initial response was that the footage was not discoverable because the officers at the precinct were not part of the case, which is ambiguous as to whether the People assumed this to be true or had reviewed the footage. Defense's Mot., Ex. A at 6.

Footnote 11:The statement is technically not postenactment, as it was issued on May 7, while the suite of revisions was not passed until a day or so later.

Footnote 12:Those jurisdictions still require dismissal when statutory speedy trial rights are violated. See 18 U.S.C. § 3162(a)(1)—(2) (requiring dismissal for violations of the federal Speedy Trial Act, although permitting without-prejudice dismissal under certain circumstances); Zedner v. United States, 547 U.S. 489, 509 (2006) ("The sanction for a violation of the [Speedy Trial] Act is dismissal . . . ."); Commonwealth v. Harth, 252 A.3d 600, 615 (Pa. 2021) (explaining that "[i]f the trial court determines that the Commonwealth violated" a defendant's statutory speedy trial rights, the court "shall dismiss the charges and discharge the defendant"); Cal. Penal Code § 1382(a) ("The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases . . . ."); People v. McDowell, 279 P.3d 547, 564 (Cal. 2012) (describing § 1382 as "mandat[ing]" dismissal).